IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT HOHENSTEIN,

        Plaintiff,

        v.

MGC MORTGAGE, INC., et al.,

        Defendants.

Case No. 2:12-cv-46
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings: a motion for a temporary restraining order (ECF No. 4) filed by Plaintiff, Robert Hohenstein; a memorandum in opposition (ECF No. 9) filed by Defendants, MGC Mortgage, Inc. and Dovenmuehle Mortgage, Inc.; and a reply memorandum (ECF No. 10) filed by Plaintiff. For the reasons that follow, this Court finds the motion not well taken.

### I. Background

According to the complaint,[1] Plaintiff, Robert Hohenstein, is a homeowner who resides in Pataskala, Ohio. Plaintiff executed a promissory note and mortgage related to his Pataskala property. He alleges that he made payments for years to First NLC Financial Services, LLC, which did business as The Lending Center. Around October 2010, however, Defendant MGC Mortgage, Inc. ("MGC") purportedly acquired the note and mortgage. Plaintiff asserts that because MGC never provided him with notice of the transfer of the note and mortgage, he kept

---

[1] Any findings of fact related to this Opinion and Order are not conclusive given that "findings of fact and conclusions of law made by a district court in granting [injunctive relief] are not binding at a trial on the merits." *United States v. Edward Rose & Sons*, 384 F.3d. 258, 261 (6th Cir. 2004) (citing *University of Texas v. Camenisch*, 451 U.S. 390 395 (1981)).

making payments to his prior mortgage servicer. At some point, Plaintiff apparently learned of the transfer and contacted MGC, which informed him that he was three payments behind in his mortgage. MGC then transferred the note and mortgage to Defendant Dovenmuehle Mortgage, Inc. ("Dovenmuehle"). Plaintiff asserts that he was again provided no notice of a transfer. A state court foreclosure proceeding culminated in a scheduled February 3, 2012 sheriff's sale of Plaintiff's property.

Plaintiff initiated the instant action on January 17, 2012. In a six-count complaint, he asserts claims against MGC for violation of 12 U.S.C. § 2605(c), 15 U.S.C. § 1641(g), and 15 U.S.C. § 2605(b), as well as claims against Dovenmuehle for violation of 12 U.S.C. § 2605(c) and 15 U.S.C. § 1641(g). (ECF No.2 ¶¶ 20-40.) Hohenstein also seeks temporary injunctive relief in the first count of his complaint, and on January 18, 2012, Plaintiff filed a motion for a temporary restraining order to stop the scheduled sheriff's sale. (ECF No. 4.) Pursuant to S. D. Ohio Civ. R. 65.1(a), this Court therefore held an informal preliminary telephone conference with the parties on January 19, 2012. Because the parties elected to proceed on briefing and without the presentation of testimony, the Court set an expedited briefing schedule on the injunctive relief motion. (ECF No. 7.) The parties have completed briefing on the motion, which is now ripe for disposition.

## II. Discussion

### A. Standard Involved

In considering whether injunctive relief is warranted, this Court must consider (1) whether Plaintiff has demonstrated a strong likelihood of success on the merits; (2) whether Plaintiff will suffer irreparable injury in the absence of equitable relief; (3) whether the

injunction would cause substantial harm to others; and (4) whether the public interest is best served by granting the injunction. *Cooey v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009) (citing *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). As the Sixth Circuit has explained, " '[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.' " *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

**B. Analysis**

Defendants correctly argue that Plaintiff is not entitled to temporary injunctive relief on numerous grounds. This Court agrees.

Federal cases such as this that arise out of state foreclosure actions present a threshold question of whether the state court proceeding has concluded. Review of the state court foreclosure case docket submitted as an attachment to Defendants' memorandum in opposition indicates that Plaintiff lost in the state court and that a judgment entry of foreclosure issued. An order of sale followed. Plaintiff did not appeal, but filed an unsuccessful motion for reconsideration in the common pleas court. The sheriff's sale is scheduled for February 3, 2012, and in the event of a sale, there will be a confirmation of sale filed with the state court.

Such a scenario may invoke the *Rooker-Feldman* doctrine. Recently, a judicial officer in the Northern District of Ohio addressed the application of this doctrine in a case that similarly arose from a state foreclosure proceeding and in which a plaintiff sought relief related to alleged fraud. That judicial officer explained:

> As a threshold matter, this Court cannot void the judgment of foreclosure. Federal district courts do not have jurisdiction over challenges to state court

> decisions even if those challenges allege that the State court's action was unconstitutional. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id.* Under this principle, generally referred to as the Rooker–Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. *Johnson v. DeGrandy*, 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. *Lavrack v. City of Oak* Park, No. 98–1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999); *see Valenti v. Mitchell,* 962 F.2d 288, 296 (3d Cir. 1992).
>
> The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker[-]Feldman analysis. First, in order for the Rooker–Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding. *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998); *see Tropf v. Fidelity National Title Insurance Co.*, 289 F.3d 929, 937 (6th Cir. 2002). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." *Catz*, 142 F.3d at 293. The Rooker–Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself. *Coles v. Granville*, 448 F.3d 853, 857–59 (6th Cir. 2006). Second, the Rooker–Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiffs' particular case as opposed to a general constitutional challenge to the state law applied in the state action. *Id.*
>
> In the present action, Plaintiff essentially questions the state court's decision granting a foreclosure and sale. Any review of federal claims asserted in this context would require the Court to review the specific issues addressed in the state court proceedings against him. This Court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. *Feldman*, 460 U.S. at 483–84 n.16; *Catz,* 142 F.3d at 293.

*Dunn v. Clunk*, No. 1:11 CV 2075, 2011 WL 4730406, at *1-2 (N.D. Ohio Oct. 7, 2011). This same rationale might apply in the instant case where, in order to grant relief on the claims Plaintiff asserts, or at least most certainly on the Count I claim for temporary and permanent

4

injunctive relief, this Court would be called upon to revisit and invalidate the state courts' foreclosure decision. *See King v. CitiMortgage, Inc.*, No. 2:10-cv-01044, 2011 WL 2970915, at *5 (S.D. Ohio July 20, 2011) (applying *Rooker-Feldman* to a count that sought to declare a foreclosure void, but not to other counts targeting fraud in the procurement of the foreclosure).

Despite asking this Court to stop the execution of the state court judgment, Plaintiff argues that he "has made no allegation that the common pleas court incorrectly applied the law to his case, or that the common pleas court was mistaken in rendering judgment against him. Rather, Plaintiff alleges Defendants' independent acts caused him damages as alleged in the complaint." (ECF No. 4, at 9.) This effort to evade application of *Rooker-Feldman* tracks the rationale behind some judicial officers declining to apply the *Rooker-Feldman* doctrine in select foreclosure cases. For example, in *Fletcher v. Federal National Mortgage Association*, No. 3:11cv00083, 2011 WL 5175611 (S.D. Ohio Oct. 4, 2011), a judicial officer from this District rejected the contention that *Rooker-Feldman* applied. The *Fletcher* magistrate judge focused on the source of the alleged injury at issue, explaining:

> The *Rooker–Feldman* Doctrine prevents federal district courts from exercising appellate jurisdiction over state court judgments and applies to cases, "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon–Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Accordingly, federal district courts lack jurisdiction under *Rooker–Feldman* when (1) a case is brought by parties unsuccessful in state court, (2) the plaintiff complains of injuries caused by state-court judgments, (3) the state-court judgment was rendered prior to the district court proceedings commencing, and (4) plaintiffs invite the district court to review and reject those state-court judgments. *Id.*
>
> Because there is little question that Plaintiffs were unsuccessful in their state-court claims, the state-court judgments were rendered prior to proceedings commencing in this Court, and that Plaintiffs plainly seek rejection of those judgments, the sole question is whether the injuries of which Plaintiffs complain

5

were caused by the state-court judgments.

Defendants correctly point out that the key to such a determination is the source of the alleged injuries. (Doc. # 18 at 127). However, they mistakenly rely on an unpublished opinion (*Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 Fed. Appx. 487, 490, 2005 U.S.App. LEXIS 28680, *8 (6th Cir. 2005)) to support their determination that Plaintiffs are complaining of injuries caused by the state-court judgments. (Doc. # 18 at 7). The Eastern Division of the United States District Court for the Southern District of Ohio held *Kafele* to have limited precedential value because (1) unpublished decisions are not controlling authority and (2) *Kafele* failed, "to recognize a significant change in circuit law wrought by the Supreme Court's ruling in *Exxon Mobile,* earlier the same year." *Miller v. Countrywide Home Loans, Inc.* 747 F. Supp. 2d 947, 957 (S.D. Ohio 2010) (citations omitted).

In order to provide guidance in the wake of *Exxon–Mobil Corp.*, the United States Court of Appeals for the Sixth Circuit explained:

> Federal jurisdiction is proper if a federal plaintiff presents an independent claim, "albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* [ *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 293, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) ] (quoting *GASH Assocs. v. Rosemont,* 995 F.2d 726, 728 (7th Cir.1993)). In the wake of *Exxon Mobil Corp.,* we recently adopted a Fourth Circuit rule to differentiate between claims attacking state-court judgments, which are barred by *Rooker–Feldman,* and independent claims, over which lower federal courts have jurisdiction. The focus, we held, must be on
>
>> ... the source of the injury that the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the Rooker–Feldman doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.
>
> *McCormick [v. Braverman* ], 451 F.3d [382] at 393 [(6th. Cir.2006)]. Thus, a complaint in which the plaintiff contends he was injured by the defendants, rather than by the state court decision itself, is not barred by Rooker–Feldman, even if relief is predicated on denying the legal conclusion reached by the state court.

*Brown v. First Nationwide Mortg. Corp.,* 206 Fed.Appx. 436, 439 (6th Cir.2006).

The Sixth Circuit Court addressed a situation similar to the matter *sub judice* in *Todd v. Weltman, Weinberg & Reis Co., L.P .A.*, 434 F.3d 432 (6th Cir. 2006). In *Todd*, the Plaintiff filed a complaint in the U.S. District Court for the Southern District of Ohio claiming that Defendant had filed a false affidavit as part of a garnishment action Defendant had previously executed against Plaintiff in Ohio state court. *Id.* At 435. The Defendant filed a motion to dismiss arguing, *inter alia*, that the *Rooker–Feldman* Doctrine barred jurisdiction. *Id.* At 434.

Applying the Supreme Court's holding in Exxon–Mobile, the Sixth Circuit stated:

> The Rooker–Feldman doctrine does not preclude jurisdiction over Plaintiff's claim. Defendant in the instant case claims this Court lacks subject matter jurisdiction because Plaintiff's federal claim is inextricably intertwined with the Ohio state court decision that Defendant's affidavit was valid. This argument ignores the fact that Plaintiff here does not complain of injuries caused by this state court judgment, as the plaintiffs did in *Rooker* and *Feldman*. Instead, after the state court judgment, Plaintiff filed an independent federal claim that Plaintiff was injured by Defendant when he filed a false affidavit. This situation was explicitly addressed by the *Exxon–Mobil* Court when it stated that even if the independent claim was inextricably linked to the state court decision, preclusion law was the correct solution to challenge the federal claim, not *Rooker–Feldman.* While Defendant is technically correct that this guidance was not essential to the holding on the facts of *Exxon Mobil,* as that case dealt with parallel state and federal proceedings, the Supreme Court went beyond the facts of the case to give clear instructions to the circuits on how to address additional factual situations. To follow the reasoning of Defendant would be to ignore these unambiguous directives from the Supreme Court.

A brief reading of Plaintiffs' complaint shows it is clear that Plaintiffs claim their injuries were caused by the Defendants, rather than the state-court judgment. Plaintiffs' claims include allegations of false affidavits, insufficient notice, and failure to show standing. (Doc. # 2 at 16). All of Plaintiffs' claims are based on alleged conduct of the Defendants. Furthermore, the claims presented by Plaintiffs were not raised or addressed in the state-court action and are therefore independent claims permissible under *Rooker–Feldman.* Accordingly, Plaintiffs claim is not barred under the *Rooker–Feldman* Doctrine.

*Fletcher*, 2011 WL 5175611, at *2-4. *See also Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 920-22 (N.D. Ohio 2009). Under this analysis, the preclusive effect of the *Rooker-Feldman* doctrine that proved dispositive in *Dunn* would not apply in the case *sub judice*.

This does not mean, however, that this Court could necessarily proceed to address the merits of Plaintiff's claims, or at least his Count I claim for temporary and permanent injunctive relief. Additional analysis in *Fletcher* provides:

> Although the *Rooker–Feldman* Doctrine does not prevent this Court from exercising jurisdiction, preclusion prevents the Court from providing Plaintiffs the relief they seek. The difference is that preclusion is not a jurisdictional matter. *Exxon–Mobil,* 544 U.S. at 293.
>
> The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to, "give the same preclusive effect to a state-court judgment as another court of that State would give." *Id.* at 293 (citing *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986)). Furthermore, 18 U.S.C. § 1257 provides that only the United States Supreme Court shall have authority to review final judgments rendered by a state's highest court. "Because the Supreme Court was specifically given jurisdiction to hear appeals from final judgments of the highest state courts, lower federal courts do not have jurisdiction to review such judgments." *Peiper v. Am. Arbitration Ass'n*, 336 F.3d 458, 461 (6th Cir. 2003) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)).
>
> Plaintiffs state in their prayer for relief, "I want the Court to stop all impending action against my home. I want the Court to vacate all actions the Defendant prevailed using false affidavits." (Doc. # 2 at 16). As a court of original jurisdiction, this Court lacks the authority to vacate a state-court judgment. See *Feldman*, 460 U.S. at 483.

*Fletcher*, 2011 WL 5175611, at *4. This latter analysis, subsequently adopted by a district judge in *Fletcher v. Federal National Mortgage Association*, No. 3:11cv083, 2011 WL 5191392, at *1 (S.D. Ohio Oct. 31, 2011), arguably informs the Court's disposition of the issues Plaintiff has placed before the Court. *See also Whittiker*, 605 F. Supp. 2d at 921 n.5 ("Efforts to litigate in

federal courts matters previously litigated in state court may be barred on other grounds, however, such as claim and issue preclusion even if *Rooker-Feldman* does not divest the district court of subject matter jurisdiction over those claims.").

Plaintiff does not expressly include invalidation of the state foreclosure judgment in the prayer for relief in his complaint. Some of Plaintiff's claims target money damages. But the first count of his complaint makes it abundantly clear that the relief he pursues goes beyond simply money damages and seeks to disturb the state court foreclosure judgment:

> 17. This is an action for emergency-temporary and permanent injunctive relief on an emergency basis and without notice.
>
> 18. The specific facts set forth in this complaint demonstrate that unless a temporary injunction against the eviction is granted, Plaintiff will suffer the irreparable injury, loss, and damage of the loss of his home.

(ECF No. 2 ¶¶ 17-18.) Such pleading echoes the federal court action impermissibly sought in *Fletcher*.

This Court cannot provide Plaintiff the injunctive relief he wants without interfering with the disposition of issues tied to the state action and without ultimately invalidating the judgment of foreclosure. It does not matter in terms of disposition whether the *Rooker-Feldman* doctrine rationale of *Dunn* or the preclusion rationale of *Fletcher* applies here. The end result is the same. Under either analysis, this Court is unable to grant Plaintiff a stay of the sheriff's sale, and that is a conclusion sufficient to dispose of the injunctive relief motion. *See Baker v. People's Choice Home Loan, Inc.*, No. 3:10-cv-327, 2010 WL 3447614, at *2-3 (S.D. Ohio Aug. 27, 2010) (noting problem with determining source of injury in foreclosure injunction case and concluding that "[o]n the basis of the evidence before it, this Court cannot determine definitively whether its subject matter jurisdiction is ousted by the Rooker-Feldman doctrine or whether the

9

action is barred on the merits by *res judicata.* However, it is clear that Plaintiff has not established that it is likely she will prevail on the merits."). *See also Murphy v. JP Morgan Chase*, No. 3:11-cv-77, 2011 WL 6122642, at *4 (S.D. Ohio Dec. 8, 2011) (alternatively applying *Rooker-Feldman* and *res judicata* to dismiss foreclosure case); *Willis v. Chase Home Fin.*, No. 5:10 CV 1494, 2010 WL 3430712, at *2 (N.D. Ohio Aug. 30, 2010) (same).

Even if this Court were wholly incorrect and the *Dunn* or *Fletcher* approaches do not apply here, the request for injunctive relief still fails. The fact that an appeal of a state court judgment of foreclosure is permitted and the nature of that judgment arguably both point to treating the state action as essentially if not technically concluded so that any related federal case such as the instant case would be asking the federal court to assume impermissibly the role of a reviewing court. Some federal courts, however, have regarded foreclosure state court proceedings in which there has been a judgment of foreclosure but no sheriff's sale yet to be ongoing. This would implicate abstention under *Younger v. Harris*, 401 U.S. 37 (1971), as Defendants argue over Plaintiff's protests.

In *Younger*, the United States Supreme Court held that federal court abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, a plaintiff invokes federal jurisdiction for the purpose of restraining state criminal proceedings. In other words, *Younger* "advised federal courts to abstain from deciding a matter that would be properly before them but for the pendency of state criminal proceedings in the matter." *Tesmer v. Granholm*, 333 F.3d 683, 688 (6th Cir. 2003) (citing *Younger*, 401 U.S. at 43-45), *rev'd on other grounds*, *Kowalski v. Tesmer*, 543 U.S. 125 (2004). The *Younger* doctrine, "which applies to an action seeking injunctive relief, applies as well to prohibit an action seeking declaratory relief

10

when a state criminal prosecution is pending." *Id*. (citing *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)). The United States Supreme Court has also held that the doctrine applies to civil matters. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986); *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

The Sixth Circuit Court of Appeals has explained that there are "[t]hree requirements . . . for proper invocation of the *Younger* doctrine: (1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990) (citing *Middlesex County Ethics Comm'n*, 457 U.S. at 432). The Court finds that if the state foreclosure action is regarded as ongoing, each requirement for invocation of the doctrine exists here.

Numerous federal cases exist in which judges have applied *Younger* when a plaintiff seeks to prevent an impending sheriff's sale related to a state foreclosure. *See, e.g., Willis*, 2010 WL 3430712, at *1 (explaining that absent extraordinary circumstances, *Younger* applies in cases where there is a pending foreclosure action). Plaintiff nonetheless argues that "there is no ongoing state court proceeding" here. (ECF No. 10, at 3.) As noted, this Court understands that argument, but notes that it only suggests application of *Rooker-Feldman* and preclusion as discussed above. Assuming that the execution of the foreclosure judgment presents ongoing an proceeding, this proceeding was ongoing at the time Plaintiff filed his complaint (and in fact remains ongoing), the second prong of the first requirement of *Younger*. Although the post-foreclosure judgment state proceeding can be regarded as essentially ancillary developments that simply effectuate execution of that judgment via the subsequent order of sale, they nonetheless

involve activity that will result in a confirmation of sale order being filed. There is ongoing state court activity.

It is beyond dispute is that state foreclosure proceedings present issues that matters of state interest. *Doscher v. Menifee Cir. Ct.*, 75 F. App'x 996, 997 (6th Cir. 2003); *Kaplan*, 2011 WL 2039111, at *2. This satisfies the second prong of *Younger*.

Finally, there is no factual basis in the record before this Court permitting the conclusion that Plaintiff did not have an adequate opportunity to raise his challenges to the foreclosure as part of the ongoing state proceedings. The record is largely silent on this issue, although review of the exhibits attached to Defendants' memorandum in opposition even indicate that Plaintiff participated in the state foreclosure proceedings with the same counsel who represents him in this federal case. This is thus not an instance in which " 'state law clearly bars the interposition of constitutional claims.' " *Middlesex County Ethics Comm'n*, 457 U.S. at 432 (quoting *Moore v. Sims*, 442 U.S. 415, 426 (1979)).

The burden is on Plaintiff to demonstrate that " 'state procedural law barred presentation of [his] claims.' " *Tesmer*, 333 F.3d at 689 (quoting *Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 692 (6th Cir. 2002)). But Plaintiff has offered no evidence to indicate that he was unable, or that he even attempted, to raise his challenges in the state forum. This point is significant, because " '[w]hen a litigant has not attempted to present [his] federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Wong-Opasi v. Haynes*, 8 F. App'x 340, 343 (6th Cir. 2001) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)).

The Court also concludes that Plaintiff has failed to demonstrate that declining to apply *Younger* would be appropriate by pointing to any requisite "extraordinary circumstance" that would make abstention unjust. *See Middlesex County Ethics Comm'n*, 457 U.S. at 435 (identifying extraordinary circumstances as bad faith, harassment, or a patently invalid state statute).

Under *Younger*, this Court cannot afford Plaintiff the injunctive relief he seeks. *See Sun Refining & Marketing Co.*, 921 F.2d at 639 ("when a case is properly within the *Younger* category of cases, there is no discretion on the part of the federal court to grant injunctive relief" (citing *Colorado River Water Conservation District v. United State,* 424 U.S. 800, 816 n. 22 (1976))). *Cf. Wong-Opasi*, 8 F. App'x 340 (holding *Younger* abstention appropriate to § 1983 action in which plaintiff sought a temporary restraining order). The fact that the *Younger* doctrine would preclude the exercise of jurisdiction in this action also means that the Court could *sua sponte* dismiss the action, or at least part of the case. *See American Family Prepaid Legal Corp. v. Columbus Bar Assoc.*, 498 F.3d 328 (6th Cir. 2007) (upholding dismissal predicated on *Younger* abstention). Other judicial officers have dismissed foreclosure-related actions based on *Younger* abstention. *See, e.g., Kaplan*, 2011 WL 2039111, at *2. The survival of Count I is notably suspect. *See Doscher*, 75 F. App'x at 997 (affirming dismissal of a complaint that asked a district court to block a foreclosure sale). The Court declines to dismiss *sua sponte* any portion of Plaintiff's case at this time. There will be time enough for additional orders or motions practice to address any such basis for dismissal.

Alternatively, Defendants also argue that the Anti-Injunction Act, 28 U.S.C. § 2283, precludes issuance of the temporary restraining order that Plaintiff seeks. Another judicial

13

officer has explained the applicable rationale as follows:

> Title 28 U.S.C. § 2283, the Anti–Injunction Act states, in full, that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Unless the injunction falls within one of the three specifically defined exceptions, the Act creates an absolute prohibition against enjoining state court proceedings, *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286–87, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), *abrogation on other grounds as recognized by Ark Blue Cross & Blue Shield v. Little Rock Cardiolaogy Clinic, P.A.*, 551 F.3d 812, 821–22 (8th Cir. 2009). The party pursuing the injunction bears the burden of establishing that the injunction falls within one of the exceptions. *Smith v. Encore Credit Corp.*, 623 F. Supp. 2d 910, 918-19 (N.D. Ohio, 2008). There is no indication that any of the exceptions apply here. *See Sherman v. Saxon Mortg. Services, Inc.* 2010 WL 2465459, 6 (W.D. Tenn., Jun 14, 2010) (if the foreclosure action is still pending in state court, Plaintiffs' prayer for relief from the foreclosure is precluded by the Anti–Injunction Act).

*Kaplan v. Fitzgerald*, No. 1:11CV0945, 2011 WL 2039111, at *1 (N.D. Ohio May 24, 2011). Assuming that there is still an ongoing state court proceeding as discussed above, the Anti-Injunction Act would apply. *See Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 941 (6th Cir. 2002). And because Plaintiff has failed to meet his burden of establishing that his injunction request falls under a permissible exception, the *Kaplan* rationale also supports denial of the requested injunctive relief. *See also Haller v. U. S. Dep't pf Housing & Urban Dev.*, No. 1:11-CV-881, 2011 WL, at *2 (S.D. Ohio Dec. 28, 2011); *Ogle v. BAC Home Loans Serv. LP*, No. 2:11-cv-540, 2011 WL 3838169, at *3 (S.D. Ohio Aug. 29, 2011).

Finally, the Court notes that even if the *Dunn* or *Fletcher* approaches do not apply here, and even if *Younger* abstention or application of the Anti-Injunction Act are not warranted, the request for injunctive relief still fails on the merits. Plaintiff has failed to demonstrate a strong likelihood of success on the merits, the first prong of the injunctive relief inquiry. Plaintiff asserts in conclusory fashion that he paid his mortgage continuously, that it was not properly

14

credited, and that he was never provided notice of the transfers of his note and mortgage from the original holder and to the servicer MGC and sub-servicer Dovenmuehle. But the affidavit of MGC Vice President Jeffrey Tschirhart and its supporting documentary business records evidence indicate that Hohenstein was provided with notice of the transfer of loan servicing, that he had made paid to Defendants, and that he defaulted on his mortgage loan. (ECF No. 9-3.) These documents undercut much of what Plaintiff has pled in his complaint and argued in his briefing without support other than his own self-serving affidavit. There is thus a conflict in the evidence. In light of this conflict, the Court of course cannot conclude that Plaintiff has demonstrated a substantial likelihood of prevailing on his claims. The first factor weighs against granting injunctive relief.

Plaintiff has similarly failed to establish that he will suffer irreparable injury in the absence of equitable relief. In an affidavit that is perhaps more properly construed as a declaration, Plaintiff asserts that if the sheriff's sale takes place, he will "face eviction and will essentially be homeless." (ECF No. 4-1, Hohenstein Aff. ¶ 6.) "Essentially" is a qualification that undercuts a representation imbued with the necessary certainty. Moreover, although this Court recognizes the subjective emotional issues surrounding the loss of a residence, the Court is cognizant that "although Plaintiff[] face[s] what could be the imminent removal from [his] home, [he] ha[s] not shown that [he] will suffer irreparable harm from the occurrence of that event." *Fletcher v. Fed. Nat'l Mortg. Ass'n*, No. 3:11cv00083, 2011 WL 1337422, at *3 (S.D. Ohio Mar. 18, 2011). Rather, "if [Plaintiff] eventually prove[s] one or more violations of [his] legal rights, [he] may be entitled to recover monetary/compensatory damages." *Id.* The Sixth Circuit has explained that "a plaintiff's harm is not irreparable if it is fully compensable by money

damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

Because neither of the first two factors in the injunctive relief inquiry weigh in Plaintiffs' favor, this Court will not discuss the remaining two factors, which implicate some complicated issues upon which little argument and essentially no evidence was presented. *See, e.g., Baker*, 2010 WL 3447614, at *4 ("It is impossible to tell whether the public interest favors stopping one more foreclosure sale in an area of the nation with an extraordinary burden of such sales at the present or whether, instead, the health of the residential real estate market might be boosted by rapid enforcement of mortgage obligations."). Additionally, having concluded that the request for a temporary injunction fails on multiple grounds, this Court need not and will not discuss Defendants' remaining alternative arguments against injunctive relief.

### III. Conclusion

The Court **DENIES** Plaintiff's motion for a temporary restraining order. (ECF No. 4.)

**IT IS SO ORDERED**.

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE