IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT HOHENSTEIN,

       **Plaintiff,**

     v.

MGC MORTGAGE, INC., et al.,

       **Defendants.**

Case No. 2:12-cv-46
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of a motion to dismiss filed by Defendant, MGC Mortgage, Inc. (ECF No. 14); a memorandum in opposition filed by Plaintiff, Robert Hohenstein (ECF No. 19); and a reply memorandum filed by MGC Mortgage, Inc. (ECF No. 21). For the reasons that follow, this Court finds the motion not well taken.

### I.  Background

According to the complaint, Plaintiff, Robert Hohenstein, is a homeowner who resides in Pataskala, Ohio. Hohenstein executed a promissory note and mortgage related to his Pataskala property. He alleges that he made payments for years to First NLC Financial Services, LLC, which did business as The Lending Center. Around October 2010, however, Defendant, MGC Mortgage, Inc. ("MGC"), purportedly acquired certain rights to the note and mortgage as a transferee. Hohenstein asserts that because MGC never provided him with notice of the transfer of the note and mortgage, he kept making payments to his prior mortgage servicer. At some point, Hohenstein apparently learned of the transfer and contacted MGC, which informed him that he was three payments behind in his mortgage. MGC then transferred the note and mortgage to Dovenmuehle Mortgage, Inc. (which is no longer a party to this litigation).

Hohenstein asserts that MGC again failed to provide him with notice of the transfer. A subsequent state court foreclosure proceeding culminated in a scheduled February 3, 2012 sheriff's sale of Hohenstein's property.[1]

Hohenstein initiated the instant action on January 17, 2012, and soon thereafter filed a motion for a temporary restraining order to stop the scheduled sheriff's sale. (ECF No. 4.) After this Court denied that motion, Hohenstein dropped his effort to affect the foreclosure proceedings and now seeks only damages related to his remaining claims. In his amended complaint, Hohenstein asserts claims against MGC for violation of 12 U.S.C. § 2605(c), 15 U.S.C. § 1641(g), and 12 U.S.C. § 2605(b).[2] (ECF No.2 ¶¶ 16-24, 34-36.) MGC has filed a motion to dismiss all three claims. (ECF No. 14.) The parties have completed briefing on the motion, which is now ripe for disposition.

---

[1] Previously, in connection with injunctive relief proceedings in this litigation, the Court noted:

> [Hohenstein] asserts in conclusory fashion that he paid his mortgage continuously, that it was not properly credited, and that he was never provided notice of the transfers of his note and mortgage from the original holder and to the servicer MGC and sub-servicer Dovenmuehle. But the affidavit of MGC Vice President Jeffrey Tschirhart and its supporting documentary business records evidence indicate that Hohenstein was provided with notice of the transfer of loan servicing, that he had made paid to Defendants, and that he defaulted on his mortgage loan. (ECF No. 9-3.) These documents undercut much of what [Hohenstein] has pled in his complaint and argued in his briefing without support other than his own self-serving affidavit. There is thus a conflict in the evidence.

(ECF No. 12, at 14-15.) The conflict between what Hohenstein pled regarding notice and what MGC presented as evidence to defeat injunctive relief does not prove dispositive of the Rule 12 motion before this Court.

[2] The amended complaint actually states that the final claim is under 15 U.S.C. § 2605(b), but the content of the claim and the briefing indicate that is a scrivener's error and that Hohenstein intended to cite to 12 U.S.C. § 2605(b).

## II. Discussion

### A. *Younger* Abstention

MGC first argues for dismissal under Federal Rules of Civil Procedure 12(b)(1), which provides that an action may be dismissed for lack of subject matter jurisdiction. Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion . . . ." *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). *See also Rapier v. Union City Non-Ferrous, Inc.*, 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).

Rule 12(b)(1) motions to dismiss based upon a lack of subject matter jurisdiction generally come in two varieties, either facial or factual attacks on the complaint. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 2004). A facial attack on the subject matter jurisdiction alleged by a complaint merely questions the sufficiency of the pleading. *Id.* In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, a similar safeguard employed under Rule 12(b)(6) motions to dismiss. *Id.* On the other hand, when a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). *See also Nat'l Ass'n of Minority Contractors v. Martinez*, 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002). As a result, this Court may weigh the evidence and resolve any factual disputes when adjudicating such a jurisdictional challenge. *Ritchie*, 15 F.3d at 598 (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

MGGC's theory is that the Court lacks subject matter jurisdiction because it must abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). In *Younger*, the United States Supreme Court held that federal court abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, a plaintiff invokes federal jurisdiction for the purpose of restraining state criminal proceedings. In other words, *Younger* "advised federal courts to abstain from deciding a matter that would be properly before them but for the pendency of state criminal proceedings in the matter." *Tesmer v. Granholm*, 333 F.3d 683, 688 (6th Cir. 2003) (citing *Younger*, 401 U.S. at 43-45), *rev'd on other grounds*, *Kowalski v. Tesmer*, 543 U.S. 125 (2004). The *Younger* doctrine, "which applies to an action seeking injunctive relief, applies as well to prohibit an action seeking declaratory relief when a state criminal prosecution is pending." *Id.* (citing *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)). The United States Supreme Court has also held that the doctrine applies to civil matters. *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986); *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

The Sixth Circuit Court of Appeals has explained that there are "[t]hree requirements . . . for proper invocation of the *Younger* doctrine: (1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990) (citing *Middlesex County Ethics Comm'n*, 457 U.S. at 432). MGC asserts that because there is an ongoing state court foreclosure proceeding, the facts satisfy all three criteria and this Court must exercise *Younger* abstention.

Numerous federal cases exist in which judges have applied *Younger* when a plaintiff seeks to prevent an impending sheriff's sale related to a state foreclosure. *See, e.g., Willis v. Chase Home Fin., LLC*, No. 5:10 CV 1494, 2010 WL 3430712, at *1 (N.D. Ohio Aug. 30, 2010) (explaining that absent extraordinary circumstances, *Younger* applies in cases where there is a pending foreclosure action). In fact, this Court discussed such application of *Younger* in this litigation when addressing Hohenstein's motion for injunctive relief. (ECF No. 12, at 10-13.) Notably, however, Hohenstein has abandoned interfering with the sale. After amending his pleading, he now seeks only damages for the alleged violations of the federal statutes.

This change in the focus of the case necessitates revisiting the potential application of *Younger*. The parties dispute only some points surrounding the doctrine. Hohenstein now concedes that there is an ongoing state proceeding, but he contests that the state foreclosure case implicates an important state interest and questions whether there was an adequate opportunity in the state proceedings to raise his claims. The issues necessitate making three basic points.

First, this Court disagrees with Hohenstein's argument that although the foreclosure matter implicated a state interest, it was not an important state interest. In the prior injunctive relief decision, this Court stated:

> It is beyond dispute is that state foreclosure proceedings present issues that [are] matters of state interest. *Doscher v. Menifee Cir. Ct.*, 75 F. App'x 996, 997 (6th Cir. 2003); *Kaplan*, 2011 WL 2039111, at *2. This satisfies the second prong of *Younger*.

(ECF No. 12, at 12.) Hohenstein argues in his briefing that such reliance on *Doscher* is incorrect because there "[t]he Sixth Circuit held that the foreclosure case involved a 'state interest,' but not an important state interest." (ECF No. 19, at 8.) Misreading *Doscher*, Hohenstein explains, has caused several courts in the Northern and Southern Districts of Ohio to transform a mere

5

state interest into the important state interest necessary for application of *Younger*.

Hohenstein is wrong. In *Doscher*, the Sixth Circuit said:

Three requirements must be met for *Younger* abstention to be appropriate: (1) there must be an ongoing state judicial proceeding; (2) the proceeding must implicate important state interests; and (3) there must be an adequate opportunity in the state proceeding to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995). When Doscher filed his complaint, all three requirements were met: the foreclosure action was pending in Menifee Circuit Court, the proceeding involved a matter of state interest, and Doscher had an adequate opportunity to raise his challenges to the proceedings. Accordingly, the district court properly abstained from ruling on Doscher's complaint.

*Doscher*, 75 F. App'x at 997. The Court recognizes the apparent basis for Hohenstein's analysis–the fact that the clause "the proceeding involved a matter of state interest" omits the word "important"–but to read into that the conclusion he advocates would be to read out of the appellate analysis the overarching dispositive clause "all three requirements were met." The Sixth Circuit stated that an important state interest was necessary and then concluded that this requirement had been met. The fact that inartful drafting or editing subsequently omitted one word from an explanatory clause does not invalidate the immediately preceding conclusion. In other words, in order to reach the holding it did, the Sixth Circuit necessarily had to have held that an important state interest was involved, even if the appellate court did not describe it as precisely as it might have one of the two times it implicitly or expressly referenced that interest. Hohenstein's selective parsing of *Doscher* therefore focuses on one ultimately insignificant tree while ignoring the forest.

Second, the parties' debate about what Hohenstein could or should have done in the state court is not dispositive of the *Younger* issue. The third factor that must exist for *Younger* to apply is that Hohenstein must have had an adequate opportunity to raise his claims as part of the

6

ongoing state proceedings.  MGC argues that such an opportunity to assert the claims existed, while Hohenstein waffles in his rebuttal that "[t]here is some question whether he could have or not, but, the important inquiry is whether [his] claims here were compulsory counterclaims in the state court action, or whether he should have, compulsively, joined Defendant MGC to the state court action."  (ECF No. 19, at 9.)  The reason this factor becomes irrelevant lies in the next point.

Third, the dispositive point in regard to *Younger* is that abstention is inappropriate because the instant litigation will not affect the state court proceedings or judgment.  Previously, Hohenstein sought to stop the sale of his former residence.  Such requested relief targeted the precise focus of the state foreclosure proceedings.  Hohenstein has now abandoned that relief and simply seeks his actual damages arising from his federal claims.  Significantly, whether MGC is liable to Hohenstein for monetary damages will not disturb the foreclosure judgment or preclude confirmation of the sale involved.  There can be interference.

The issues *sub judice* are thus tangential or collateral to the issues litigated by the state court so that the instant case does not present the type of interference against which *Younger* protects.  In other words, there is not "a pending state court action concerning the same issues implicated by a federal civil action" that requires abstention here.  *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 541 (6th Cir. 2010).  Nor is Hohenstein attempting to use this federal action to shield him from enforcement of the state court judgment.  *See, e.g., Devlin v. Kalm*, 594 F.3d 893, 895 (6th Cir. 2010).  Accordingly, *Younger* is inapplicable here and there is no basis for concluding that there is a lack of subject matter jurisdiction.

**B. Claim Preclusion**

MGC alternately moves for dismissal on the grounds that Hohenstein has failed to set forth a claim upon which this Court can grant relief.  This Federal Rule of Civil Procedure 12(b)(6) argument requires the Court to construe the amended complaint in favor of Hohenstein, accept the factual allegations contained in that pleading as true, and determine whether the factual allegations present any plausible claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

To be considered plausible, a claim must be more than merely conceivable.  *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

MGC argues that Hohenstein has failed to assert claims upon which this Court can grant relief.  Hohenstein asserts that MGC violated 12 U.S.C. § 2605(b) and (c) by twice failing to notify him of the transfer of servicing of his note and mortgage.  He also asserts that MGC failed

to provide him with sufficient notice that included the information required under 15 U.S.C. § 1641(g). According to MGC, the Ohio doctrine of claim preclusion bars Hohenstein from asserting all three claims.

It is important to note that MGC attacks only Hohenstein's ability to assert these claims here and not the sufficiency of how Hohenstein has pled the claims. This Court confines itself to the actual argument for dismissal presented and offers no opinion on any other potential avenue of attack that courts have addressed (*e.g.*, whether Hohenstein has sufficiently asserted actual damages, if indeed he is required to do so). With that qualification, the Court proceeds to address the merits of MGC's narrow attack.

These merits do not support MGC's argument. The Sixth Circuit has recently explained claim preclusion under Ohio law as follows:

> Ohio takes an expansive view of claim preclusion. In *Grava*, the Ohio Supreme Court expanded res judicata beyond its traditional limits. Ohio formerly held that "[a] judgment or decree in a former action [did] not bar a subsequent action where the causes of action are not the same, even though each action relates to the same subject matter." *Id.* at 228 (citation omitted). The Ohio Supreme Court updated its view of claim preclusion:
>
>> That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or kinds of relief.
>
> *Id.* at 229 (quoting Restatement (Second) of Judgments § 24 (1982)). "For the purpose of a res judicata analysis, a 'transaction' is defined as a 'common nucleus of operative facts.' " *U.S. Bank Nat'l Ass'n v. Gullotta*, 899 N.E.2d 987, 991 (Ohio 2008) (quoting *Grava*, 653 N.E.2d at 226). "Claim preclusion not only bars all claims that were litigated, but also all claims that could have been litigated growing from the same transaction." *Price v. Carter Lumber Co.*, No. 24991, 2010 Ohio App. LEXIS 3658, at *15 (Ohio Ct. App. Sept. 15, 2010).

*Demsey v. Demsey*, No. 10-3769, 2012 WL 1345730, at *3 (6th Cir. Apr. 18, 2012).  The court of appeals then summarized the analysis to be employed:

> Ohio law requires that a party seeking to invoke res judicata prove four elements:
>
> 1) A prior final, valid decision on the merits by a court of competent jurisdiction;
>
> 2) A second action involving the same parties or their privies as the first;
>
> 3) A second action raising claims that were or could have been litigated in the first action; and
>
> 4) A second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Id.* (citing *In re Fordu*, 201 F.3d 693, 703-04 (6th Cir. 1999); *accord Hillman v. Edwards*, No. 10AP–950, 2011 Ohio App. LEXIS 2279, at *9 (Ohio Ct. App. June 2, 2011)).

In light of this test, the Court disagrees with MGC's contention that Hohenstein had to assert or could have asserted his claims against MGC in the state court foreclosure proceedings. MGC argues that both the state court action and this federal case "indisputably involve the same facts, namely Mr. Hohenstein's default on his mortgage loan." (ECF No. 14, at 7.)  But this contention ignores what is actually involved in each case.

MGC's theory rests on Hohenstein's proposition that default occurred because of a lack of notices.  Because one allegedly caused the other under Hohenstein's version of the events, MGC reasons, they are part of the same transaction or occurrence.  But the subject matter of the state court proceeding was a failure to pay a mortgage, not the failure to provide statutorily mandated notices.  Hohenstein's claims against MGC here target a purported failure to provide sufficient notices that could exist even if there had never been a foreclosure action and even if Hohenstein were still up to date on his mortgage.  The alleged notice wrongdoing does not arise

10

out of the occurrence that is Hohenstein's alleged failure to pay his mortgage that formed the basis of the state foreclosure action. Either MGC provided proper notices or it did not, regardless of whether Hohenstein paid his mortgage. That Hohenstein argues he paid the wrong entity due to the lack of notice in no way informs the separate issue of whether MGC provided sufficient notices. For present purposes, MGC providing notice is thus a distinct transaction or occurrence from Hohenstein subsequently tendering his mortgage payment. *Cf. Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 797-98 (S.D. Ohio 2006) (holding that state debt collection cases involving whether accounts were delinquent did not arise out of a common nucleus of operative facts as a federal case involving the practices the debt collectors employed in trying to collect on the debts).

MGC also argues that although it was not a party to the state court proceeding, it was in privity with the plaintiff in that action, LNV Corporation, the holder of the note involved. MGC then asserts that Hohenstein could and should have raised his federal claims in the state court by asserting a *breach of contract* counterclaim against LNV Corporation and by joining MGC as a party to the counterclaim for the conduct that allegedly violated *the federal statutes*. This argument conflates parties and claims.

It also plays loose with state procedural rules. Ohio Rule of Civil Procedure 13(A) provides that a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Ohio R. Civ. P. 13(A). The federal claims against MGC do not arise out of Hohenstein's failure to pay his mortgage. Ohio Rule of Civil Procedure 13(B) in turn contemplates permissive counterclaims that do not arise out of the transaction or occurrence, but such a claim must still be against the opposing party. It is unclear to this Court

11

how LNV Corporation could be liable to Hohenstein for MGC's purported failure to provide requisite notices so as to present a viable counterclaim.

Also unclear is how Hohenstein would be required or even able to bring third party MGC into the state action as part of a "counterclaim" for conduct wholly unrelated to LNV Corporation's state claim or anything that entity did or failed to do.  The Ohio Rules of Civil Procedure do not provide for compulsory third-party claims, and neither Ohio Rule of Civil Procedure 19 nor 19.1 endorse such creative joinder.

Additionally, contrary to MGC's argument, Ohio Rule of Civil Procedure 14(A) does not provide a mechanism for Hohenstein bringing MGC into the state case.  That state civil rule provides that "a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."  Ohio R. Civ. P. 14(A).  MGC would not be liable to Hohenstein for all or part of LNV Corporation's claim against him.  And as discussed above, MGC's asserted conduct did not arise out of the same transaction or occurrence at the core of the state case.

MGC's "counterclaim" theory is therefore unpersuasive, and the company's argument that Hohenstein has not stated claims upon which this Court can grant relief fails.

### III.  Conclusion

The Court **DENIES** MGC's motion to dismiss.  (ECF No. 14.)

**IT IS SO ORDERED**.

                                               /s/ Gregory L. Frost
                                      GREGORY L. FROST
                                      UNITED STATES DISTRICT JUDGE